OPINION
Defendant-appellant, Randolph S. Davis, appeals his conviction in the Butler County Court of Common Pleas for assault and felonious assault.
Appellant was indicted in March 1998 on one count of felonious assault in violation of R.C. 2903.11(A)(1) and two counts of felonious assault by means of a deadly weapon in violation of R.C.2903.11(A)(2). All three offenses are second degree felonies. The charges stemmed from an incident that occurred on January 21, 1998, wherein appellant allegedly assaulted Reva Sue Perkins ("Perkins") and her son, Kevin Bays ("Bays"), with a baseball bat in Hamilton, Ohio. The facts leading to the indictment were described by appellant to a law enforcement officer as follows:[1]
 [Appellant] stated on the night of the offense Perkins got drunk. She came to his friends house [sic] on Forrest and took the car. He said he had something in the car that did not belong to her crack that was someone else's. He said he argued with Perkins and she threw some punches at him. He said he pushed her off and Bays came at [him]. He said all he remembers is that [Bays] came at [him] and [appellant] took the bat and hit Bays. He said he does not recall hitting Bays while [they were] down on the ground. He said at that time Perkins pulled him off Bays and told him where the car was.
 A bill of particulars filed in April 1998 states in part that in the evening of January 21, 1998
 [Appellant] struck Kevin Bays in the head several times with a baseball bat causing him to be in a comatose state and causing subdural hematoma, cerebral parenchymal hemorrhages, multiple skull fractures, multiple facial fractures, scalp lacerations and multiple traumas which required surgery, prolonged hospitalization and prolonged rehabilitation[.][2]
 Appellant entered not guilty pleas to all three charges and the case was set for trial on April 28, 1998. On April 27, 1998, appellant withdrew his not guilty pleas and entered a written plea of guilty to one count of felonious assault against Bays in violation of R.C. 2903.11(A)(1) and one count of assault against Perkins in violation of R.C. 2903.13(A), a first degree misdemeanor. As part of the plea agreement, count two of the indictment, felonious assault by means of a deadly weapon, was merged into count one while count three, second degree felony felonious assault by means of a deadly weapon, was reduced to a first degree misdemeanor assault.
Before accepting appellant's guilty pleas, the trial court, pursuant to Crim.R. 11, ascertained that appellant (1) understood the nature of the charges against him and the possible maximum penalties, (2) voluntarily and freely entered his guilty pleas, and (3) understood that pleading guilty would waive his constitutional and statutory rights. The trial court subsequently accepted appellant's guilty pleas, ordered a presentence investigation, and scheduled a sentencing hearing for June 3, 1998.
The sentencing hearing was eventually held on June 10, 1998 but was not recorded. On that day, the trial court sentenced appellant to a five-year term of imprisonment on the felonious assault charge and to a concurrent six-month term of imprisonment on the assault charge. After it was discovered that the sentencing proceedings had not been recorded, a hearing to perfect the record was held on January 27, 1999. The following day, the trial court filed an Entry of Findings of Trial Court Pursuant to Appellate Rule 9(c) in which it adopted the state's App.R. 9(C) statement of the sentencing proceedings. This appeal follows in which appellant raises two assignments of error.
In his first assignment of error, appellant argues that the trial court's failure to record the sentencing proceedings at the time it imposed sentence warrants reversal of his conviction. Appellant contends that such failure prejudiced his ability to show on appeal that he was denied effective assistance of counsel at the sentencing hearing as follows:
 Absent the transcript, the record before this Court shows only that [trial counsel] merely said the following at the sentencing hearing:
 * * * In mitigation of the sentence, Your honor Mr. Davis is extremely sorry for his conduct. He does admit his guilt in his matter but he still denies he hit Kevin Bays while he was down on the ground.
 On this state of the record, it appears that [defense counsel] did not even mention at the sentencing hearing that the injuries to Kevin Bays occurred after Kevin Bays had assaulted [appellant] with the deadly weapon, and that the prosecution agreed that Kevin Bays had initially come after [appellant] with the baseball bat. * * *
 It is appellant's contention that this "apparently unmentioned circumstance" was critical to the determination by the trial court of the seriousness of the offense.
Crim.R. 22 requires that "[i]n serious offense cases all proceedings shall be recorded." Pursuant to Crim.R. 2(C), "serious offense" includes any felony. However, "[a] violation of [Crim.R. 22], in and of itself, is not prejudicial error per se. The rule makers have made provision for the lack of a record by adopting App.R. 9(C) * * *." State v. Podborny (July 30, 1985), Cuyahoga App. No. 44574, 1985 Ohio App. LEXIS 6763, at *2-3, unreported.
Pursuant to App.R. 9(C), "[i]f no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." This statement is then served upon the appellee, who may make objections or suggest amendments to the statement. App.R. 9(C). The statement and any objections or suggested amendments are then submitted to the trial court for settlement and approval, and the settled and approved statement is included as part of the record on appeal. Id. Alternatively, the parties can agree upon a statement of the case and, after receiving approval from the trial court, include it in the record on appeal. App.R. 9(D).
In the case at bar, after it was discovered that the sentencing hearing had not been recorded, a hearing to perfect the record was held. Two weeks before the hearing, appellant prepared an App.R. 9(C) statement of the sentencing proceedings which he served upon the state. The state, in turn, prepared its own App.R. 9(C) statement of the sentencing proceedings. Following the hearing and after reviewing both statements, "all the evidence and * * * all the relevant documents," the trial court adopted the state's statement by entry filed January 28, 1999. Upon reviewing the record, we find that the trial court's adoption of the state's App.R. 9(C) statement cured the court's failure to record the sentencing proceedings and adequately perfected the record under App.R. 9(C) and Crim.R. 22.
We are mindful of appellant's claim that he was denied effective assistance of counsel when defense counsel apparently failed to mention during the sentencing hearing, as evidenced by the state's App.R. 9(C) statement, that Bays first attacked appellant with a baseball bat. While it is true that the state's statement does not mention that fact, that information was nevertheless in the record before the trial court. First, appellant's statement to a law enforcement officer, as provided by the state in its answer to defense counsel's discovery request, clearly indicates that Bays came at appellant first, armed with a baseball bat, and that appellant did not strike Bays with the bat until after he took it away from Bays. Second, during the guilty plea hearing, the state clearly stated that Bays came at appellant first, armed with a baseball bat. The state also specifically stated that this fact was not in dispute.
In light of all of the foregoing, we find that the trial court's failure to record the sentencing proceedings at the time it imposed sentence does not warrant reversal of appellant's conviction where appellant availed himself of App.R. 9(C) and where the record was subsequently adequately perfected under App.R. 9(C). Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that he was denied effective assistance of counsel when defense counsel advised him to plead guilty to felonious assault rather than the lesser offense of aggravated assault. R.C. 2903.12 governs aggravated assault and states in relevant part that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * * [or] [c]ause or attempt to cause physical harm to another[.]" R.C. 2903.12(A)(1), (2). Appellant claims that in light of the fact that while unarmed, he was attacked by the victim with a baseball bat which amounted to serious provocation occasioned by the victim that was sufficient to incite appellant into using force, defense counsel was incompetent in advising him to plead guilty to felonious assault.
It is well-established that a guilty plea waives the right to claim that the accused was prejudiced by ineffective assistance of counsel, except to the extent that the defects complained of caused the plea to be less than knowing and voluntary. State v.Spates (1992), 64 Ohio St.3d 269, 272-273. Thus, in order to prove a claim of ineffective assistance of counsel in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366,370.
It is also well-established that a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,301. Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant,State v. Bradley (1989), 42 Ohio St.3d 136, 142, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland v. Washington (1984),466 U.S. 668, 689, 104 S.Ct. 2052, 2065. A presumption exists that "under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. at 2065.
Upon thoroughly reviewing the record, we find that appellant's claim of ineffective assistance of counsel is without merit. The record shows that before his guilty pleas were accepted by the trial court, appellant was afforded a full hearing in compliance with Crim.R. 11(C)(2). The trial court engaged in a lengthy and thorough colloquy with appellant. Appellant told the court that while he was not happy to enter a guilty plea, he felt it was in his best interest. Appellant told the court that he had the opportunity to consult with his attorney, that his guilty pleas were freely entered and that they were not the result of any threats, promises, inducements, or the influence of medication, alcohol, or drugs. Appellant also told the trial court that he understood the nature of the charges against him and the possible maximum sentences, and that by pleading guilty, he was waiving the constitutional rights enumerated in Crim.R. 11(C)(2)(c).
In a written guilty plea form signed by appellant, appellant acknowledged he understood, inter alia, the nature of the charges against him and the possible defenses he might have, that the jury verdict would have to be unanimous before the jury could find him guilty of any offense, and that by pleading guilty, he was waiving his right to have the state prove his guilt beyond a reasonable doubt. We find that the foregoing clearly shows that appellant knowingly, voluntarily, and intelligently entered his guilty pleas.The record shows that under the original indictment, appellant was charged with three counts of felonious assault, all second degree felonies. R.C. 2929.14(A)(2) provides that "[f]or a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years." If found guilty under the original indictment, appellant could have received three consecutive sentences pursuant to R.C. 2929.41(A). Through plea negotiations, however, defense counsel negotiated to have two counts of felonious assault merged into one count and the third count of felonious assault reduced to a first degree misdemeanor assault. After accepting appellant's guilty pleas to the foregoing, the trial court sentenced appellant to a five-year term of imprisonment for the felonious assault charge. Pursuant to R.C. 2929.41(B), appellant's six-month term of imprisonment for the misdemeanor assault charge was ordered to be served concurrently.
Appellant, however, makes much ado about the fact that he was first attacked by Bays with a baseball bat and that once he took the bat away from Bays, he used it to defend himself. While appellant may have been first attacked by Bays, the record unequivocally shows that appellant used more force than reasonably necessary to defend himself when he struck Bays several times with the baseball bat when Bays was no longer armed. Indeed, the force used by appellant was so excessive that it caused Bays to be in a comatose state and to suffer numerous severe injuries which required surgery, prolonged hospitalization, and prolonged rehabilitation.
Based upon these facts, we find that appellant cannot establish he was prejudiced by counsel's performance. Considering the gravity of the injuries sustained by Bays, it is clear that appellant gained a significant benefit from defense counsel's plea negotiations and advice to plead guilty to one count each of felonious assault and assault. In light of all of the foregoing, we therefore find that appellant was not denied effective assistance of counsel. Appellant's second assignment of error is overruled.
POWELL, P.J., and YOUNG, J., concur.
[1] This statement was provided by the state to appellant's defense counsel in its April 8, 1998 answer to defense counsel's discovery request pursuant to Crim.R. 16(B)(1)(a).
[2] Stedman's Medical Dictionary, Fifth Unabridged Lawyers' Edition (1982), defines subdural as "beneath the dura mater." Id.
at 1355. The dura mater is a "tough, fibrous membrane forming the outer envelope of the brain and the spinal cord." Id. at 429. Stedman's Medical Dictionary defines parenchymal as "relating to the parenchyma," id. at 1031, which is "[t]he distinguishing or specific cells of a gland or organ[.]" Id.